UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

ERMIS MANAGEMENT COMPANY LIMITED,

          Plaintiff,

v.

UNITED CALIFORNIA DISCOUNT CORPORATION, D/B/A UNITED NEVADA TRADE INTERNATIONAL; JOSEPH P. CLARK; AND DAVID B. CLARK,

          Defendants.

2:07-CV-01021-PMP-RJJ

O R D E R

Presently before the Court is Defendants' Motion to Dismiss (Doc. #30), filed on August 30, 2007. Plaintiff filed an Opposition (Doc. #36) on September 17, 2006. Defendants filed a Reply (Doc. #41) on October 1, 2007. Also before the Court is Defendants' Request for Judicial Notice in Support of Defendants' Motion to Dismiss (Doc. #31), filed on August 31, 2007. The Court held a hearing on the motions December 14, 2007. (Mins. of Proceedings [Doc. #51].)

**I.    BACKGROUND**

This action arises from Plaintiff Ermis Management Company's attempt to enforce an arbitration award and judgment against the principals of Durward Marine, LLC ("Durward") by piercing Durward's corporate veil. Plaintiff owns an ocean-going vessel, and has its principal place of business in Malta. (Compl. ¶ 4.) Durward is a limited liability company organized in Nevada. (Id. ¶ 2.) Defendants are principals of Durward. (Id. ¶ 24-

25.)  In August 1999, Plaintiff and Durward entered an agreement entitled "Tanker Voyage Charter Party" ("the Agreement") whereby Durward would lease Plaintiff's vessel for a specified rate.  (Id. ¶ 8.)  The Agreement allowed Durward to sub-charter the vessel to third parties, who would make freight payments to Durward for the ocean transport of cargo.  (Id. ¶ 9.)  The parties agreed to extend the original agreement to August 2000.  (Id. ¶ 11.)  On July 12, 2000, Durward notified Plaintiff it would be unable to make any further payments.  (Id. ¶ 12.)  Because the vessel had a third party's cargo on board, Plaintiff completed the transport of cargo.  (Id. ¶ 13.)  Plaintiff incurred expense in completing the voyage, as well as by settling various debts Durward owed.  (Id.)  Apparently, Plaintiff needed to complete the shipment of third parties' cargo and pay some of Durward's obligations to ensure Plaintiff's vessel would not be restrained or encumbered.  (Id.)

        To recover its costs and damages, Plaintiff initiated arbitration proceedings against Durward in London, pursuant to the Agreement.  (Id. ¶ 15.)  Though Durward was noticed properly, it did not participate in the arbitration.  (Id.)  In April, 2002, the arbitrator awarded Plaintiff $682,654.36, plus interest, costs, and attorney's fees.  (Id. ¶ 16, Ex. 2.)  In October 2002, Plaintiff filed to confirm the arbitration award in this Court.  (Id. ¶ 19, Ex. 3.)  On December 3, 2002, United States District Judge Kent J. Dawson issued an Order finding this Court has admiralty and maritime jurisdiction in this case under 28 U.S.C. § 1333.  (Id., Ex. 4.)  The Order confirmed the award and found Plaintiff was entitled to recover attorney's fees related to the proceedings.  (Id. ¶ 20, Ex. 4.)  Judge Dawson also held that Durward had waived any right to contest the award by failing to appear.  (Id. ¶ 22, Ex. 4.)  Judge Dawson signed a judgment ("Nevada Judgment") for $784, 226.10.  (Id. ¶ 21, Ex. 5.)  Plaintiff, however, was unable to collect the judgment because Durward was insolvent.  (Id. ¶ 23.)  Plaintiff registered the judgment in the United States District Court for the Central District of California on April 30, 2003.  (Id. ¶ 25.)  In an effort to collect the judgment, Plaintiff conducted discovery of Durward's assets from May 2003 to August

2005. (Id.) This discovery also was aimed at Durward's principals, including Defendants Joseph Clark and David Clark. (Id.)

In March 2007, Plaintiff filed a complaint in the United States District Court for the Central District of California seeking to enforce the Nevada Judgment against Defendants by amending the judgment to add Defendants as judgment debtors. (2:07-cv-01662-JFW-E, Doc. #22.) Defendants moved to dismiss on the ground that the Central District of California was an improper forum because the judgment was entered in the District of Nevada. (Id.) The court granted Defendants' motion to dismiss and also granted Plaintiff leave to amend its complaint. (Id.) Plaintiff filed an amended complaint in May 2007. (Id.) Defendants again moved to dismiss. (Id.) On July 9, 2007, before the court heard the motion, Plaintiff voluntarily dismissed without prejudice. (Id. at 5.) In August 2007, Plaintiff brought this action to pierce Durward's corporate veil and enforce the judgment against Defendants in this Court.

Defendants now move to dismiss, arguing that Plaintiff's action is untimely under Nevada law. Defendants further argue that enforcing a judgment against them would violate due process because they were not named parties in the original litigation. Plaintiff responds that maritime jurisdiction applies, and thus the doctrine of laches applies, not a state statute of limitations. Plaintiff further argues it properly may pursue Defendants under an alter-ego theory of piercing the corporate veil without violating Defendants' due process rights.

**II.   LEGAL STANDARD**

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." Wyler Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). However, the Court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in the plaintiff's complaint.

3

See Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994). There is a strong presumption against dismissing an action for failure to state a claim. See Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted). The issue is not whether the plaintiff ultimately will prevail, but whether he may offer evidence in support of his claims. Id. (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

All the Rules require is a "short and plain statement" that adequately gives the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id. (citations and internal quotations omitted). However, the alleged facts "must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, --- U.S. ----, 127 S. Ct. 1955, 1965 (2007). Facts must be sufficient to "nudge [the plaintiff's] claims across the line from conceivable to plausible." Id. at 1974.

**III.    DISCUSSION**

Defendants argue Nevada law governing limited liability companies bars Plaintiff's suit. Plaintiff responds that maritime law, not Nevada law is the relevant law, and thus its suit is not barred. Plaintiff further contends the doctrine of laches governs.

Because this case concerns a contract that is maritime in nature, it is within the admiralty jurisdiction of this Court. Puerto Rico Ports Auth. v. Umpierre-Solares, 456 F.3d 220, 224 (1st Cir. 2006). Nevada law governing limited liability companies applies as well because Durward is a Nevada limited liability company. Nevada Revised Statute § 86.343(7), which applies to creditors attempting to reach improper distributions provides, in relevant part,

> A member who receives a distribution from a limited-liability company in violation of this section is not liable to the limited-liability company and, in the event of its dissolution or insolvency, to its creditors, or any of them, for the amount of the distribution after the expiration of 3 years after the date of the distribution unless an action to recover the distribution from the member is commenced before the expiration of the 3-year period following the distribution.

A distribution violates § 86.343 if it results in the company's inability to pay its debts as

4

they came due, or the company's assets being less than the liabilities. Nev. Rev. Stat. § 86.343(1).

Section 86.343 may have affected this Court's analysis if Plaintiff were attempting to reach distributions Defendants received from Durward. However, the goal of Plaintiff's suit is to pierce Durward's corporate veil. In doing so, Plaintiff seeks to hold Defendants directly liable for Durward's obligations, not to recover improper distributions. While Plaintiff's Complaint alleges facts that could be construed as improper distributions, Plaintiff makes those allegations to support its alter ego theory; Plaintiff does not indicate an intention to support independent allegations of improper distributions. Thus, Plaintiff's suit is not within the scope of the statute, and therefore the statute does not bar it.

Under maritime law, the doctrine of laches governs the timeliness of a complaint, not a state statute of limitations. King v. Alaska Steamship Co., 431 F.2d 994, 996 (9th Cir. 1970); see also Puerto Rico Ports Auth., 456 F.3d at 227. Though the Court may look to a limitations period in an analogous federal or state statute for guidance, the central inquiry is whether Plaintiff's delay in bringing suit was unreasonable and whether the delay prejudiced Defendants. Puerto Rico Ports Auth., 456 F.3d at 227.

Defendants did not raise an argument based upon laches in their motion to dismiss. Because Defendants relied only on Nevada statutory law and did not raise the issue of laches in its motion to dismiss, the Court will deny Defendants' motion on the basis of timeliness.

**2. Due Process**

Defendants argue that holding them responsible for the judgment against Durward would violate their due process rights because Durward was the only named defendant in the prior proceedings. Defendants further argue that because they did not participate in any prior proceedings, they cannot be held responsible for Durward's debt. Defendants claim this would be tantamount to offensive collateral estoppel, especially

5

1  because the judgment against Durward was by default.  Plaintiff argues in response that all
2  prior proceedings respected Durward's due process rights.  Plaintiff further argues that
3  because Defendants and Durward are alter egos, and thus essentially the same entity,
4  Plaintiff's attempt to enforce the judgment against Defendants by piercing the corporate veil
5  does not violate their due process rights.

6        Piercing the corporate veil has long been a recognized equitable remedy to
7  prevent injustice that would result from recognition of the corporate entity.  See Seymour v.
8  Hull & Moreland Eng'g, 605 F.2d 1105, 1111 (9th Cir. 1979).  Federal courts sitting in
9  admiralty may pierce the corporate veil "to reach the 'alter egos' of a corporate defendant."
10  Chan v. Soc'y Expeditions, Inc., 123 F.3d 1287, 1294 (9th Cir. 1997).  Such courts
11  "generally apply federal common law in examining corporate identity."  Id.  "'Corporate
12  separateness is respected unless doing so would work injustice upon an innocent third
13  party.'"  Id. (quoting Kilkenny v. Arco Marine, Inc., 800 F.2d 853, 859 (9th Cir. 1986)).  A
14  corporate veil may be pierced "where a corporation uses its alter ego to perpetrate a fraud or
15  where it so dominates and disregards its alter ego's corporate form that the alter ego was
16  actually carrying on the controlling corporation's business . . . ."  Chan, 123 F.3d at 1294.

17        Whether to pierce the corporate veil is a fact-intensive inquiry, and because
18  Defendants do not address Plaintiff's alter-ego claims in their motion to dismiss, this Court
19  need not address the claim substantively in considering the motion.  For purposes of this
20  motion, the Court will assume Plaintiff can demonstrate Defendants and Durward are alter
21  egos.  The question that remains before this Court is whether, taking all facts Plaintiff pled
22  as true, allowing this cause of action would violate Defendants' due process rights.

23        Due process generally requires notice and an opportunity to be heard.  Neal v.
24  Shimoda, 131 F.3d 818, 831 n.14 (9th Cir. 1997).  It also "guarantees that any person
25  against whom a claim is asserted in a judicial proceeding shall have the opportunity . . . to
26  present his defenses."  Katzir's Floor & Home Design, Inc. v. M-MLS.COM, 394 F.3d

6

1143, 1149 (9th Cir. 2004). A court does not violate due process by including in a judgment additional defendants who, in their capacities as alter egos of a corporation, had control over the litigation and were "virtually represented." See id.; see also Nelson v. Adams USA, Inc., 529 U.S. 460, 464, 470-71 (2000) (distinguishing amending a judgment to include an alter ego defendant from adding a mere "flesh-and-blood party behind the [corporation]," and suggesting the addition of an alter ego defendant would not violate due process). This is consistent with the established rule that if two entities are found to be alter egos, they "are treated as one for purposes of determining liability." M/V Am. Queen v. San Diego Marine Constr. Corp., 708 F.2d 1483, 1490 (9th Cir. 1983). If the alter ego doctrine applies, the corporation and the individual who dominates it are treated as one, "so that any act committed by one is attributed to both, and if either is bound, by contract, judgment, or otherwise, both are equally bound . . . ." Dudley v. Smith, 504 F.2d 979, 982 (5th Cir. 1974) (quotation and citation omitted).

Katzir's Floor & Home Design, Inc. v. M-MLS.COM does not stand for the broad proposition that piercing the corporate veil to enforce a default judgment is a per se violation of due process. In Katzir's, a defendant corporation ceased defending a lawsuit because of its impending dissolution and the court subsequently entered default judgment entered against it. Id. at 1146-47. The plaintiff then moved to add the corporation's sole owner to the judgment as a judgment debtor, pursuant to California Code of Civil Procedure § 187. Id. at 1147. Under § 187, a court has the authority to amend a judgment to add judgment debtors if the new party is an alter ego of the old party, and the new party controlled the litigation. In re Levander, 180 F.3d 1114, 1121 (9th Cir. 1999).

In Katzir's, the district court found that the corporation's sole owner was the defendant corporation's alter ego, and granted the plaintiff's motion to amend the judgment. Id. at 1147. The United States Court of Appeals for the Ninth Circuit subsequently reversed, holding that adding the owner to the judgment was improper because neither

prong of § 187 was satisfied. <u>Id.</u> at 1150. The Ninth Circuit ruled that the district court's determination that the owner and corporation were alter egos was clearly erroneous. <u>Id.</u> at 1149. The Ninth Circuit further held that the district court erred because it had made no finding that the owner was sufficiently tied to the litigation. <u>Id.</u> at 1149. As such, the district court violated the owner's due process rights by "summarily add[ing]" him to the judgment without allowing him to litigate questions and present defenses relevant to the underlying litigation. <u>Id.</u> at 1150.

Due process does not prohibit piercing the corporate veil to enforce default judgments. Courts have not hesitated to pierce the corporate veil in the context of a default judgment; the controversy typically surrounds not the nature of the judgment, but whether there is sufficient basis to pierce the corporate veil. <u>See, e.g.</u>, <u>United States v. Standard Beauty Supply Stores, Inc.</u>, 561 F.2d 774 (9th Cir. 1977); <u>Sea-Land Servs., Inc. v. Pepper Source</u>, 941 F.2d 519 (7th Cir. 1991). Moreover, to adopt Defendants' characterization of the <u>Katzir's</u> holding would create a perverse incentive for potential alter ego defendants to incur default judgments when their corporations are sued, because default judgments would make them immune from personal liability.

If Plaintiff ultimately demonstrates that Durward's corporate veil should be pierced, Defendants should be viewed as the same as Durward for purposes of liability. Defendants then could not be characterized as innocent non-parties to the litigation, and holding them liable for Durward's debts would be in keeping with the established alter ego doctrine. If, on the other hand, Plaintiff cannot meet this burden, Defendants will not be subject to the same liability as Durward. In either event, Plaintiff's suit does not offend Defendants' due process rights and should not be prohibited simply because the underlying liability arose from a default judgment. For the foregoing reasons, the Court will deny Defendants' motion to dismiss.

**IV.      CONCLUSION**

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (Doc. #30) is hereby DENIED.

IT IS FURTHER ORDERED that Defendants' Request for Judicial Notice in Support of Defendants' Motion to Dismiss (Doc. #31) is hereby GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to File a Sur-Reply (Doc. #42) is hereby GRANTED.

DATED:  December 28, 2007.

_____

PHILIP M. PRO
United States District Judge